IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| LAWRENCE LEAGANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:21-cv-01866-DCN |
| vs. ) | |
| ) | **ORDER** |
| LEMAITRE VASCULAR, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The following matter is before the court on defendant LeMaitre Vascular Inc's ("LeMaitre") motion to dismiss, transfer, or stay, ECF No. 6, and plaintiff Lawrence Leagans's ("Leagans") motion to advance declaratory judgment determination and for a speedy hearing, ECF No. 8. For the reasons set forth below, the court grants LeMaitre's motion to dismiss. As a result, the court finds Leagans's motion to advance declaratory judgment moot.

## I. BACKGROUND

LeMaitre is a medical device company that develops, manufactures, and sells devices for the treatment of peripheral vascular disease. Leagans is a former employee of LeMaitre. He began working at LeMaitre on or around March 23, 2009 as a sales representative covering South Carolina and Georgia. When Leagans resigned from the company in April 2021, he served as the regional sales manager for the "East Region," which covered eleven states extending from South Carolina to New Jersey. Throughout the duration of his employment with LeMaitre, Leagans lived and worked in Charleston County, South Carolina.

As a condition of his employment, Leagans executed an Employee Obligations Agreement ("Agreement"). The Agreement contained several restrictive covenants, including a covenant not to compete, a nonsolicitation provision, and a nondisclosure provision. The relevant provisions are below.

> 2.  **Covenant Not to Compete.**  Employee agrees that the services to be rendered by him or her to the Company are special and unique. During the period commencing on the date of this Agreement and ending two (2) years after the termination of Employees' engagement or employment by the company in any capacity, Employee shall not, as an owner, part-owner, partner, director, officer, trustee, employee, agent, consultant, joint venturer, stockholder, representative, sole proprietor, independent contractor or in any other capacity directly or indirectly engage in or participate in any activity, business, organization or entity (i) which is either carried on, located or doing business in any state of the United States and (ii) which is in competition with the then existing or planned business of the Company, including without limitation, any products or services then being developed, produced, manufactured, provided or marketed by the Company.

ECF No. 1-1 ¶ 2.

> 3.  **Nonsolicitation.**  During the period commencing on the date of this Agreement and ending two (2) years from the termination of Employee's employment with the Company, the Employee shall not, as an owner, part-owner, partner, director, officer, trustee, employee, agent, consultant, joint venturer, stockholder, sole representative, sole proprietor or independent contractor, or in any other capacity or on behalf of any other person or entity, directly or indirectly (a) solicit, divert or take away any existing customer or business of the Company, or (b) hire, engage, retain, or solicit as an employee, consultant or in any other capacity any person employed by the Company at the time of, or at any time in the twelve-month period prior to, such hiring, engagement, retention or solicitation.

Id. ¶ 3.

> 5.  **Nondisclosure Obligation.**
>
>     (a)   The Employee will not, at any time, whether during or after the termination of employment, for any reason whatsoever, use for his or her own benefit or the benefit of any person or entity other than the Company or disclose to any person or entity (both commercial and noncommercial) any of the following information either regarding the Company of regarding any of its customers, clients, contractors,

> consultants, licensees or affiliates if held in confidence by the Company, except for such disclosures as may be required by the Company in the ordinary course of the Employee performing his or her duties as an employee of the Company: trade secrets or confidential business information, including research and development activities; computer software; product designs, prototypes and technical specifications; show-how and knowhow; business plans and strategies; pricing and costing policies; customer and supplier lists; and nonpublic financial information (the "Confidential Information").

Id. ¶ 5(a). The agreement also contains a provision stating that "[t]his Agreement shall be governed by, and construed in accordance with, the internal laws of the Commonwealth of Massachusetts, without regard to conflicts of laws principles thereof." Id. ¶ 11.

Leagans resigned from LeMaitre on April 30, 2021 to accept a position with Silk Road Medical Inc. ("Silk Road"). By all accounts, LeMaitre and Silk Road are generally competitors, as both companies manufacture and sell medical devices for the treatment of vascular disease. At Silk Road, Leagans serves as a principal area manager covering the territory of South Carolina. Leagans alleges that after he was hired, he would be in training and onboarding until September or October 2021, and after that, he would begin selling a medical device that does not compete with the LeMaitre device that Leagans previously sold. ECF No. 1, Compl. ¶¶ 20, 46. According to Leagans, the devices are used to treat different vascular issues. Id. ¶ 22. According to LeMaitre, however, Leagans had previously suggested that there would be "100% overlap" of surgeons who use both devices. ECF No. 6-1 at 2 (citing ECF No. 1-2).

After learning that Leagans had accepted a position with Silk Road, LeMaitre's general counsel raised concerns about a potential violation of LeMaitre's noncompetition agreement. On May 21, 2021, counsel for LeMaitre followed up with a cease-and-desist letter to Leagans, writing that "[y]our employment by Silk Road as Principal Area

Manager constitutes breach of your non-compete restriction." ECF No. 1-2. In response, Leagans's counsel spoke with LeMaitre's counsel over the phone on May 25, 2021. During that call, Leagans alleges that his counsel indicated that Leagans would be in training for four to six weeks, that Leagans would not pose a threat to LeMaitre's business interests, and that the parties should seek a mutually agreeable resolution during that time. Compl. ¶ 44–45.

On June 17, 2021, LeMaitre filed a complaint in the District of Massachusetts (the "Massachusetts court"), alleging breach of restrictive covenants and seeking injunctive relief (the "Massachusetts Action"). LeMaitre Vascular Inc. v. Leagans, No. 1:21-cv-11012-NMG (D. Mass. 2021) (ECF No. 1) (hereinafter, "Mass. Dkt." et seq.). LeMaitre provided a courtesy copy of the complaint to Leagans's counsel within hours of filing. ECF No. 9 at 6. The next day, June 18, 2021, Leagans filed a complaint in this court, requesting a declaratory judgment finding the restrictive covenants in the Agreement to be invalid. See Compl.

In the Massachusetts Action, Leagans filed a motion to dismiss or, in the alternative, to stay or transfer the case to this court on August 13, 2021. Mass. Dkt. 12. Leagans's motion was referred to a magistrate judge. The magistrate judge issued an R&R on September 30, 2021 recommending against dismissal or transfer.[1] Mass. Dkt. 30.

---

[1] Although LeMaitre appealed to that R&R in a letter to the court, ECF No. 18, the court does not consider the magistrate judge's findings in the Massachusetts Action probative to this action. The primary decision of whether the Massachusetts Action should be dismissed or transferred is within the province of the Massachusetts court. Likewise, this court must independently determine whether dismissal or transfer is appropriate in this action. As such, the R&R in the Massachusett's Action does not

4

In the instant matter, LeMaitre likewise filed a motion to dismiss, transfer, or stay on July 9, 2021. ECF No. 6. On July 15, Leagans filed his response in opposition, ECF No. 7, and LeMaitre replied on July 22, ECF No. 9. Leagans filed his motion to advance the court's declaratory judgment determination and for a speedy hearing on July 15, 2021. ECF No. 8. On August 5, LeMaitre responded to the motion, ECF No. 13, and on August 19, Leagans replied, ECF No. 16. This court held a hearing by video on the motion to dismiss, transfer, or stay on October 6, 2021. ECF No. 19. As such, both motions have been fully briefed and are now ripe for review.

## II. DISCUSSION

Because dismissal would moot the motion to advance the declaratory judgment determination, the court first addresses LeMaitre's motion to dismiss, transfer, or stay this case in favor of the Massachusetts Action. Finding dismissal warranted, the court finds the issue of whether to expedite Leagans's declaratory judgment pursuant to Federal Rule of Civil Procedure 57 moot, and it need not consider Leagans's motion.

**A. Motion to Dismiss, Stay, or Transfer**

As this court has previously stated, the Fourth Circuit adheres to the "first filed" rule. MVP Grp. Int'l, Inc. v. Smith Mountain Indus., Inc., 2012 WL 425010, at *1 (D.S.C. Feb. 9, 2012) (citations omitted). The rule provides that "when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed." Victaulic Co. v. E. Indus. Supplies, Inc., 2013 WL 6388761, at *2 (D.S.C. Dec. 6, 2013) (quoting Allied–

---

impact the court's decision here. However, as the court will discuss, the court finds it relevant which defenses were alleged by Leagans and considered by the R&R.

Gen. Nuclear Servs. v. Commonwealth Edison Co., 675 F.2d 610, 611 n.1 (4th Cir. 1982)). "A district court may dismiss, stay, or transfer a later-filed lawsuit in deference to the first filed action." St. Paul Fire & Marine Ins. Co. v. Renne Acquisitions Corp., 2010 WL 2465543, at *2 (W.D.N.C. June 14, 2010). However, "[a]pplication of the rule is discretionary, not mandatory," and the Fourth Circuit "has no unyielding 'first-to-file' rule." Victaulic, 2013 WL 6388761, at *2.

"Procedurally, the court first considers whether the two competing actions are substantially the same or sufficiently similar to come within the ambit of the first-to-file rule." Id. (quoting Harris v. McDonnell, 2013 WL 5720355, at *3 (W.D. Va. Oct. 18, 2013)). "[D]uplicative actions a[re] those where 'the parties, issues, and available relief do not significantly differ between the two cases.'" MVP Grp., 2012 WL 425010, at *1 (citing Cottle v. Bell, 2000 WL 1144623, at *1 (4th Cir. 2000) (unpublished table opinion)); see also Nexsen Pruet, LLC v. Westport Ins. Corp., 2010 WL 3169378, at *2 (D.S.C. Aug. 5, 2010) ("Suits are parallel if substantially the same parties litigate substantially the same issues in different forums.").

Here, the court need not consider whether the competing actions are duplicative because Leagans admits that the first-filed rule applies in this case. ECF No. 7 at 7 n.2. Instead, Leagans argues that certain exceptions to the first-filed rule apply. First, Leagans argues that an exception applies when a balance of convenience factors weighs in favor of litigating the case in the second case's forum. Second, Leagans argues that there is an exception when the first-filed action is an improper "hip pocket" action filed for the sole purpose of rushing to the courthouse to obtain a favorable forum. Id. at 2. Other courts have termed a similar exception the "special circumstances" exception. See,

e.g., CompuZone, Inc. v. Top Tobacco, L.P., 2015 WL 12804523, at *6 (D.S.C. May 5, 2015). In response, LeMaitre maintains that only the first-filed court—here, the District of Massachusetts—should decide whether any exception to the first-filed rule applies. ECF No. 6-1 at 4; ECF No. 9 at 3. In support, LeMaitre cites Pfizer, Inc. v. Mylan Inc., 2009 WL 10270101, at *2 (N.D. W. Va. Nov. 20, 2009) and Income Tax School, Inc. v. Lopez, 2012 WL 3249547, at *12 (E.D. Va. Aug. 7, 2012). Although LeMaitre does not cite it, a court in the District of South Carolina has upheld the same principle. See Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 2012 WL 12893801, at *5 (D.S.C. May 18, 2012) ("[I]t is the court in which the first-filed action was brought that should decide whether an exception to the first-to-file rule applies.") (internal quotations and citation omitted).

Nevertheless, the rule that only the first-filed court decides whether an exception applies appears to contravene other cases from within the District of South Carolina. Courts in this district—even when ruling as the second-filed court—have stated that if a court determines the first-filed rule applies, it "then considers whether any exception to the rule should be applied." Victaulic, 2013 WL 6388761, at *3; see also CompuZone, 2015 WL 12804523, at *4.

To square these seemingly competing principles, the court determines that weighing the balance of convenience factors is viewed as an "exception" by some courts, while other courts view it as a test that must be applied in a transfer motion—the difference is largely semantic. For example, one of the cases cited by LeMaitre for the principle that the first-filed court should decide whether an exception applies still made the determination "by looking to the same factors they use in deciding whether to transfer

7

a case under 28 U.S.C. § 1404(a)." Scardino v. Elec. Health Res., LLC, 2016 WL 1321147, at *2 (D.S.C. Apr. 5, 2016) (cited at ECF No. 6-1 at 4). In another case, the court considered the balance of convenience factors without discussing any exceptions. See Seithel v. Feldman & Pinto, P.A., 2011 WL 3924179, at *8 (D.S.C. Sept. 7, 2011). Therefore, the court finds that even if the first-filed court "should decide whether an exception to the first-to-file rule applies," the second-filed court should still consider the balance of convenience under the same factors as 28 U.S.C. § 1404(a). See Hartford Fire, 2012 WL 12893801, at *5. On the other hand, the exception for "hip pocket" actions is more clearly seen as an exception, and based on the district court's ruling in Hartford, the court reserves that issue for the District of Massachusetts to decide.

### 1. Balance of Convenience

"The factors a court considers in weighing the conveniences are essentially the same as those considered in connection with a motion to transfer venue pursuant to 28 U.S.C. § 1404(a)." Nexsen Pruet, 2010 WL 3169378, at *2 (citations omitted). The factors "commonly considered" are:

> (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Atkins v. Mortara Instrument, Inc., 2017 WL 10754250, at *2 (D.S.C. Sept. 29, 2017). "Typically, the burden is on the movant to show that transfer to another forum is proper, however, the first[-]filed rule shifts this burden to the party seeking adjudication in the second forum." MVP Grp., 2012 WL 425010, at *2 (citing Rite Way Crack Repair, LLC v. Guardian Crack Repair, LLC, 2009 WL 2923085, at *3–4 (D. Md. Sept. 10, 2009)). The court addresses each of the convenience factors in turn.

### a. Ease of Access to Sources of Proof

Leagans contends that "the vast majority of evidence" is located in South Carolina. ECF No. 7 at 12. However, if the party with the burden "does not provide any specificity regarding the location of potential witnesses or relevant documents in this forum," the court need not "accord this factor much weight in its favor." See Victaulic, 2013 WL 6388761, at *4. Here, the court finds that Leagans has failed to provide any specificity on the evidence that is purportedly located in South Carolina. The court possesses no information about what documents Leagans intends to rely on to support his claims. Even if the court were to surmise what documents will be central to the case, there is no indication they will necessarily be found in South Carolina. For example, the parties dispute whether the products sold by Silk Road compete with those sold by LeMaitre. The product designs and sales records retained by Silk Road—which is not alleged to be a South Carolina company—may not necessarily be kept in South Carolina.

In any case, Leagans has failed to demonstrate that this factor definitively swings in his favor.

### b. Convenience of the Parties and Witnesses

Naturally, it would be inconvenient for Leagans to litigate the case in Massachusetts when he lives in South Carolina. However, "transferring this action to [Leagans's] preferred forum would simply shift the inconvenience" from Leagans to LeMaitre, considering LeMaitre is incorporated in Delaware with a principal place of business in Massachusetts. See JTH Tax, Inc. v. Callahan, 2013 WL 3035279, at *5 (E.D. Va. June 6, 2013) (finding that the party convenience factor did not support transfer when transfer would simply shift the inconvenience from defendant to plaintiff). Even if the court considered the relative financial abilities of the parties to overcome the

9

inconvenience of traveling, Leagans has not provided any discussion about what those costs would entail for him.[2] Therefore, although litigating in South Carolina may offer relative convenience to Leagans, this factor offers "little support" for Leagans's appeal to keep the case before this court. See id.

### c. Cost of Obtaining the Attendance of Witnesses

Additionally, Leagans avers that the "vast majority" of witnesses related to the parties' claims are in South Carolina. ECF No. 7 at 12. Again, Leagans fails to allege any specific information about who these witnesses are. Based on the representations made by counsel for both parties at the hearing, the court expects there to be witnesses from both LeMaitre and Silk Road, both of which are headquartered outside of South Carolina. Therefore, the court finds that this factor is neutral at best.

### d. The Availability of Compulsory Processes and Possibility of a View by the Jury

Leagans does not address these two factors, and the court similarly finds them inapplicable to this matter.

### e. The Interest of Having Local Controversies Decided at Home

Leagans is a citizen of South Carolina. He covered territory that included South Carolina while employed as a salesperson at LeMaitre. His alleged improper employment at Silk Road, where he covers the South Carolina territory, is at the heart of this lawsuit. Typically, "litigation should take place in the federal judicial district or division with the closest relationship to the operative events." Speed Trac Techs., Inc. v. Estes Express Lines, Inc., 567 F. Supp. 2d 799, 804 (M.D.N.C. 2008). The court

---

[2] Additionally, LeMaitre counsel represented at the hearing that that Silk Road is paying for Leagans's costs and fees.

preliminarily finds that there is an interest in having Leagans's case decided in South Carolina.

However, this factor is often informed by the which state's law applies to the controversy.  See BHP Int'l Inv., Inc. v. OnLine Exch., Inc., 105 F. Supp. 2d 493, 499 (E.D. Va. 2000) (finding that alternative forum had a strong interest in hearing a case decided under that state's law).  Here, the court has not yet determined which state's law should apply.  Leagans contends that South Carolina's public policy interests are at stake based on how each court resolves this issue.  At the hearing, Leagans's counsel acknowledged that this was the principal reason that this case should remain in this court.

Leagans agrees that the Agreement contains a provision which provides that the Agreement should be governed by Massachusetts law.  ECF No. 7 at 11; see ECF No. 1-1 ¶ 11.  To rebut this, Leagans argues that South Carolina will not enforce choice-of-law provisions that violate the state's public policy.  ECF No. 8 at 7 (citing Nucor Corp. v. Bell, 482 F. Supp. 2d 714, 728 (D.S.C. 2007)).  Leagans argues that under South Carolina law, restrictive covenants 2, 3, and 5(a) are facially invalid because the covenant not to compete is not limited in geographic location, the nonsolicitation provision is not limited to customers that Leagans previously worked with, and the nondisclosure provision is not limited in time.  ECF No. 8 at 8–11.  Leagans suggests that the Massachusetts court will not reach the same conclusion and will thus issue a judgment against Leagans that is against South Carolina's public policy and that LeMaitre will nevertheless seek to enforce it in South Carolina.

Leagans's argument assumes that the Massachusetts court will automatically enforce the choice-of-law provision and apply Massachusetts law, not South Carolina

law. However, the Massachusetts court is just as capable of determining whether South Carolina law should apply as this court. In CH2O, Inc. v. Bernier, the court weighed the choice of law issue as a factor for whether to dismiss, stay, or transfer the case. 2011 WL 1485604, at *6 (W.D. Wash. Apr. 18, 2011). The court found that "[e]ither the California federal court or this court is capable of determining whether California or Washington law applies in this case, and either court is capable of applying California or Washington law to the facts of this case. This factor does not weigh in favor of either [defendant] or [plaintiffs]." Id. The same is true here. Massachusetts is able to address Leagans's argument that South Carolina has an overriding interest in not enforcing actions that are inconsistent with its public policy. Indeed, it appears that Leagans made the same argument in his motion to dismiss, transfer, or stay in the Massachusetts Action. Mass. Dkt. 13 at 12.

Leagans also cites repeatedly to Herring v. Lapolla Industries, Inc., 2013 WL 12148849 (D.S.C. Oct. 7, 2013). There, the court weighed a motion to transfer the case from South Carolina to Texas but decided to retain jurisdiction, in part because it found that:

> If the case is transferred to Texas, it is unlikely that Texas will apply South Carolina law to determine if the non-compete clause violates South Carolina's public policy. The end result of a transfer could be a judgment that is against South Carolina's public policy and yet is sought to be enforced in South Carolina.

Id. at *5. The court finds that Herring is inapplicable. First, the case is distinguishable because in Herring, there was no case pending in the Southern District of Texas—much less a first-filed case there. As such, the court did not need to weigh factors such as judicial economy and the need to avoid inconsistent judgments—which, as the court

12

discusses below, are crucial considerations when there are duplicative actions. Second, no part of the holding in Herring bars Leagans from presenting his same arguments as counterclaims or defenses in the Massachusetts action. In Herring, the court had the discretion to weigh South Carolina's public policy and feared another court would not, but nothing prevents the Massachusetts court from considering those arguments. See also Shipley Co., Inc. v. Clark, 728 F. Supp. 818, 823 (D. Mass. 1990) (considering defendants' argument that "Michigan's public policy against restrictive covenants voids a contract's choice-of-law provision" but ultimately ruling that Massachusetts had an equal interest in protecting its companies from breaches of contract).

Finally, Leagans argues that since the restrictive covenants are facially invalid, the Massachusetts court will be forced to rewrite, or "blue pencil," the restrictive covenants to make them reasonable. ECF No. 7 at 12. Leagans contends, however, that blue-penciling an overbroad restrictive covenant expressly violates South Carolina public policy, which disfavors rewriting agreements and binding parties to terms that do not reflect the parties' intention. But Leagans once again ignores that the Massachusetts court is capable of considering South Carolina's public policy against blue penciling and will consider South Carolina's interests when deciding whether to uphold the choice-of-law provision. See TGG Ultimate Holdings, Inc. v. Hollett, 224 F. Supp. 3d 275, 283 (S.D.N.Y. 2016). In Hollett, the Southern District of New York considered the enforceability of a non-compete agreement which contained a choice-of-law clause stating that New York law would govern. Id. at 279. A federal court tasked with applying state law must apply the forum state's choice-of-law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Therefore, the Southern District of

New York applied New York law, which dictates that the enforceability of a choice-of-law provision is based on the "substantial relationship" test—the first prong of the approach provided in the Second Restatement of Conflict of Laws ("Second Restatement"). Hollett, 224 F. Supp. 3d at 281–82. Under that test, the court found that California had the most significant contacts in the action, and therefore, the choice-of-law provision was invalid for specifying that New York law should apply. Id. at 282.

Here, the Massachusetts court will apply Massachusetts's choice-of-law rules and could find that South Carolina has greater interests in this case, and therefore, that the choice-of-law provision is invalid. Although this determination is for the Massachusetts court to make, the court briefly notes that Leagans's assumption that the court will not do so is made in haste. "Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy." Hodas v. Morin, 814 N.E.2d 320, 325 (Mass. 2004). "To decide whether the choice-of-law provision conforms to public policy, Massachusetts courts apply the 'two-tiered analysis' of the [Second Restatement] . . . ." Fine v. Guardian Life Ins. Co. of Am. & Park Ave. Sec., 450 F. Supp. 3d 20, 31 (D. Mass. 2020) (internal quotations and citation omitted). That test looks to "[1] whether the State chosen by the parties has a 'substantial relationship' to the transaction and, [2] whether 'application of the law of the chosen state . . . would be contrary to a fundamental policy of a state . . . which has a materially greater interest than the chosen state.'" Id. (internal quotations and citation omitted) (emphasis added).

Although New York courts can stop at the substantial relationship test, the Hollett court also noted that "[n]otwithstanding the lack of significant contact to New York, the Court is also persuaded that California has a materially greater interest in the litigation

14

than New York and that application of New York law would contradict a significant policy of California." Id. at 283. In other words, a New York court was willing to consider the argument that the other forum had a significant public policy interest at stake in the litigation pending in the New York court, and Massachusetts follows a similar, if not more favorable, approach to New York's choice-of-law rules. In any case, Leagans will be able to present his argument in the Massachusetts Action to argue that South Carolina law applies.[3]

Therefore, the court finds that while it may be true that South Carolina has a strong interest in this case, the factor is not dispositive because the choice of law is an issue that is capable of resolution in the foreign tribunal as well.

### f. The Interests of Justice

Even if the other factors weigh in Leagans's favor, other courts have determined that in the application of the first-to-file rule, "the interest of justice factor (i.e., promotion of judicial economy, avoidance of inconsistent judgments) 'may be decisive in ruling on a transfer motion, even though the convenience of the parties and witnesses point in a different direction." Victaulic, 2013 WL 6388761, at *4 (quoting Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)).

Duplicative litigation should be avoided "particularly when potentially compulsory counterclaims are involved." CompuCredit Holdings Corp. v. Akanthos Capital Mgmt., LLC, 2011 WL 124220, at *1 (D. Minn. Jan. 14, 2011); see also Nat'l

---

[3] Even if Massachusetts upholds the choice-of-law provision and LeMaitre seeks to enforce a judgment that Leagans considers unfavorable, there is no guarantee that South Carolina public policy values the interest in narrowly-tailored restrictive covenants over principles of comity.

Equip. Rental, Ltd. v. Fowler, 287 F.2d 43, 46 (2d Cir. 1961) (holding that a district judge exercised sound discretion in enjoining a party from proceeding in a second-filed case when compulsory counterclaims were involved). Here, LeMaitre anticipates that Leagans will file compulsory counterclaims that render this matter entirely duplicative. ECF No. 6-1 at 6. Leagans responds that he has not filed a responsive pleading in the Massachusetts Action, so Federal Rule of Civil Procedure 13(a) is inapplicable. ECF No. 7 at 14. The court agrees that application of Rule 13(a) is premature, but Leagans ignores LeMaitre's argument that these are the type of claims that would be filed as compulsory counterclaims in the Massachusetts Action. The court agrees that there is a high likelihood that Leagans's claims here will be pleaded as counterclaims in the Massachusetts Action, making the risk of duplicative litigation particularly pronounced.[4]

  Therefore, the risk of a future judgment that violates South Carolina public policy is not enough to overcome the other factors—including the federal courts' interests in judicial economy and avoidance of inconsistent judgments—which weigh heavily in LeMaitre's favor. The court therefore finds that Leagans has not carried his burden of proving that the balance of convenience favors retention of this case while the Massachusetts Action continues onward.

  The claims in the Massachusetts and South Carolina suits represent two sides of the same coin. A party's case in chief in one venue will be its defense in the other, and thus, justice demands a single determination of this controversy. Therefore, the court

---

[4] As an additional factor, courts have also found that "the primarily declaratory and anticipatory nature" of a second-filed action also favors transfer under the interests of justice. CompuZone, 2015 WL 12804523, at *8.

finds that permitting the two actions to proceed independently would impede the interests of justice. Because this case is duplicative of the Massachusetts Action, the court dismisses this case without prejudice, and, as the court discussed earlier, Leagans will be able to raise his arguments as defenses in the Massachusetts Action, to the extent he has not done so already. A case need not be used as grist for the mill twice. If the Massachusetts court decides that the case is more like grits than Boston baked beans, and is better suited for the tastes of South Carolina, this court will accept it then.

### B. Motion to Advance Declaratory Judgment

The dismissal of the case moots Leagans's motion to advance the declaratory judgment determination and for a speedy hearing under Federal Rule of Civil Procedure 57. As such, the court need not further address it.[5]

### IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** LeMaitre's motion to dismiss, and the complaint is **DISMISSED** without prejudice.

---

[5] This includes consideration of the case cited by Leagans's counsel at the hearing, Chemgard, Inc. v. Haynes, 2016 WL 11190867 (S.C. Ct. Com. Pl. Nov. 8, 2016), which was cited for the proposition that courts may find a restrictive covenant facially overbroad without the aid of any additional facts. In any event, Leagans may present this argument in the Massachusetts Action.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 12, 2021**
**Charleston, South Carolina**